(No. 15538.—Judgment reversed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARNOLD H. BRAUTIGAN, Plaintiff in Error.

*Opinion filed December 19, 1923—Rehearing denied Feb. 6, 1924.*

1. CRIMINAL LAW—*practice in criminal court of Cook county is same as in circuit court.* The powers of the criminal court of Cook county, the judges thereof, and the proceedings, process and practice in the court, are the same as in the circuit court.

2. SAME—*grand jury does not continue beyond term.* At common law the existence of the grand jury ceased with the term of the court, and no statute has changed this rule or authorized any court to continue a grand jury beyond the adjournment of the term.

3. SAME—*when a special grand jury may be called at common law.* The common law power of the court to call a special grand jury is limited to cases of offenses committed after the grand jury has been discharged or when some offender is arrested after the discharge of the grand jury.

4. SAME—*when a grand jury continued beyond term has no de facto existence—contempt.* A grand jury continued beyond the term of the court by an order entered without compliance with the statutory method of summoning a special grand jury has no

*de facto* existence where there is another grand jury *de jure* performing the duties of such body, and a witness cannot be punished for contempt in refusing to answer questions during an examination before the unauthorized body; and the question of the want of jurisdiction cannot be waived but may be asserted at any time. (*People* v. *Cochrane,* 307 Ill. 126, distinguished.)

5. OFFICES—*de facto officer or body cannot exist while de jure officer exercises functions of the office.* An officer *de jure* is one who is in all respects legally appointed and qualified to exercise the office, and if the duties of an office or public body are performed by an officer or body *de jure,* another officer or body, although claiming under color of title, cannot become an officer or body *de facto* by undertaking to perform official acts or duties.

6. JURISDICTION—*jurisdiction cannot be given by consent or waiver.* Every act done by a body or a court without jurisdiction is void and may be called in question or disregarded in any proceeding and by any person at any time, and consent or waiver can not confer jurisdiction.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding.

JOHN C. FARWELL, and NASH & AHERN, (MICHAEL J. AHERN, and THOMAS E. SWANSON, of counsel,) for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, (FREDERICK A. BROWN, WILLIAM P. MACCRACKEN, JR., and GEORGE L. WIRE, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

Arnold H. Brautigan, the plaintiff in error, while a witness in the criminal court of Cook county before the grand jury, refused to answer certain questions on the ground that the answers might incriminate him and subject him to fines, penalties and forfeitures. He was brought into open court and persisted in his refusal. An order that he be released from all liability to prosecution or punishment in accordance with section 35 of division 1 of the Criminal Code

was entered by the court and he was sent back to the grand jury room. He again refused to answer the questions for the same reason he had given before, and having been again brought before the court persisted in his refusal, whereupon the court adjudged him guilty of contempt of court and sentenced him to imprisonment in the county jail for four months. He sued out a writ of error and by his assignments of error avers that it is apparent that answers to the questions asked might incriminate him; that the order entered was not broad enough to protect him from prosecution for crimes which his answers might tend to prove; that the section of the Criminal Code in question does not apply to investigations by grand juries; that the grand jury was not legally organized and all of its proceedings were void, and that there were various irregularities of procedure which denied to the plaintiff in error due process of law and rendered all the proceedings void.

The terms of the criminal court of Cook county are held monthly, beginning on the first Monday of the month. The record shows that at the August term, 1922, on the first Monday of the month, a grand jury was duly empaneled, sworn and charged by the court, and that the same thing occurred in each succeeding month, to and including May, 1923. On the last day of the August term, 1922, an order was entered on the motion and petition of the State's attorney of Cook county, reciting that the court finds that it is for the best interests of public justice that the regular grand jury of Cook county be continued to the September term of the criminal court, in order, and for the sole purpose, that the grand jury may be enabled to complete its investigation of the alleged violations of criminal law by present and former members of the board of education of the city of Chicago and by present and former employees of said board, and by persons and firms doing business with said board or who have heretofore done business with said board, and by any persons acting in criminal concert

with any of the aforesaid persons or firms; and it was
therefore ordered that the regular grand jury of Cook
county for the August term, 1922, was thereby continued
to the September term, 1922, of the criminal court of Cook
county, and was directed to continue its investigation in
relation to the alleged violations of criminal law by the
persons recited in the previous part of the order. A like
order was entered on the last day of the September term
and of the October term continuing the grand jury to the
next term. Similar orders were entered on the last day of
the November term on the motion of the State's attorney
and the Attorney General, and on the last day of the January
term on the motion of the Attorney General. On the
last day of the February term on motion of the Attorney
General a like order was made, which also directed the
grand jury, in addition to the investigations which it had
been engaged upon, "to investigate alleged violations of
criminal law by present and former officers, employees and
agents of the city of Chicago, Illinois, and by persons and
firms doing business with the said city of Chicago, its offi-
cers, agents and employees, or who have heretofore done
business with said city of Chicago, its officers, employees
or agents, and with persons and firms acting in criminal
concert with any of the aforesaid persons or firms, and to
consider no other matters whatsoever." The same order
was entered on the last day of the March term and of the
April term. It was at the May term, 1923, that the plain-
tiff in error appeared before the grand jury and the events
which are the subject of this proceeding occurred.

At common law the sheriff of every county was bound
to return to every session of the peace and every commis-
sion of oyer and terminer and of general gaol delivery,
twenty-four good and lawful men, who were sworn to the
number of twelve at least and not more than twenty-three,
and constitute the grand jury, to whom indictments were
presented for their consideration and action. (4 Black-

stone's Com. 302.) Though the statute of this State does not in express language require a grand jury to be summoned at every term of the circuit court or at any term, such requirement has been assumed, in accordance with the proceedings at common law, unless the statute has expressly provided that no grand jury be summoned. The first three sections of division 11 of the Criminal Code direct that the grand jury having been empaneled and instructed by the court, shall retire to their room to consider such matters as may be brought before them; that they shall present all offenses cognizable by the court at which they attend, and that if they are dismissed before the court adjourns they may be summoned again on any special cases at such time as the court directs. The act of May 2, 1873, "concerning circuit courts, and to fix the times for holding the same in the several counties in the judicial circuits in the State of Illinois, exclusive of the county of Cook," (Rev. Stat. 1874, p. 334,) made no reference to either grand or petit jury, except to provide in section 2 that when in the opinion of the judge it should not be necessary for the speedy administration of justice to summon a grand and petit jury, or either of them, he might by an order dispense with either or both of such juries for any term or part of a term. The act of 1915, "to revise the law concerning the time of holding the terms of circuit court and of the calling of juries in the several judicial circuits exclusive of Cook county," (Laws of 1915, p. 353,) retains section 2 substantially as section 19 of the latter act, fixes the time for holding the circuit courts in the various counties of the State except Cook, and establishes special regulations as to calling grand and petit juries in certain counties. It provides that at certain terms of court in certain counties no grand jury or no petit jury, or neither a grand nor petit jury, shall be summoned unless by the order of the court or judge, and as to all other terms of court and all other counties there is no provision of any statute requiring a

grand jury to be summoned, but the requirement is left as at common law by which a grand jury was summoned. The powers of the criminal court of Cook county and the judges thereof, and the proceedings, process and practice in the court, are the same as those of the circuit court and the judges thereof. (Rev. Stat. 1874, p. 339.)

The grand jury at common law sat through the term unless its duties were sooner completed, and its existence ceased with the term. Two grand juries were summoned in the county of Middlesex and in the county of Suffolk, while in Yorkshire one panel of forty-eight freeholders and copyholders only could be returned to serve in the assizes, and at the sessions only forty could be returned on the panel. (1 Chitty on Crim. Law, 157, 310, 311.) These were special exceptions, there being under the common law of England, except in these instances, but one grand jury, consisting of not less than twelve or more than twenty-three men. (1 Chitty on Crim. Law, 310.) Another grand jury might be summoned on two occasions, the first when before the end of the sessions the grand jury, having brought in its bills, was discharged by the court and after its discharge either some new offense was committed and the party taken and brought into gaol, or when, after the discharge of the grand inquest, some offender was taken and brought in before the conclusion of the sessions. The other instance of a new grand jury being sworn was when it was to inquire, under the statute 3 Henry VII, ch. 1, of the concealment of a former inquest. This was anciently the proper mode of punishing the grand jurors if they refused to present such things as were within their charge of which they had sufficient evidence. This latter case may be disregarded, for it fell into disuse many years ago, and the practice which has been since followed, instead of impeaching the grand jury who failed to find a true bill, was to present an indictment to another grand jury. The common law power of the

court to call a special grand jury, since the practice of impeachment of the grand jury has been abandoned, has been limited to cases of offenses committed after the grand jury has been discharged or when some offender has been arrested after the discharge of the grand jury.

Our statute (Rev. Stat. chap. 78, sec. 19,) has provided a method of summoning a special grand jury, as follows: "The judge of any court of record of competent jurisdiction may order a special venire to be issued for a grand jury at any time when he shall be of opinion that public justice requires it. The order for such venire shall be entered on the records of the court by the clerk thereof; and such clerk shall forthwith issue such venire under his hand and the seal of the court, and deliver the same to the sheriff, who shall execute the same by summoning, in the same manner now provided or that may hereafter be provided by law for summoning jurors, twenty-three persons qualified by law, to constitute a grand jury. Such venire shall state the day on which such persons shall appear before the court." No attempt was made to comply with this section and no claim of compliance is made by the Attorney General. The People rely upon the fact that the record shows that the grand jury of the August term, 1922, was never discharged but was continued from term to term because its work was not completed. At common law the grand jury expired with the term, and no statute has changed this rule or authorized any court to continue a grand jury beyond the adjournment of the term. Therefore the grand jury's authority ceased on the last day of the August term with the adjournment of the court, and the order purporting to extend its powers was void.

It is contended, however, that the plaintiff in error did not refuse to testify because of the illegality of the orders continuing the grand jury, and that a witness cannot question the authority of the grand jury, since it had a *de facto* existence. "The *de facto* doctrine was introduced into the

law as a matter of policy and necessity, to protect the interests of the public and individuals where those interests were involved in the official acts of persons exercising the duties of an office without being lawful officers." (*State* v. *Carroll*, 38 Conn. 449; *State* v. *Poulin*, 105 Me. 224.) The doctrine has been applied to sustain the acts of officers acting as such though without legal title, and the obligations, contracts and acts of municipal corporations and of public bodies incurred, undertaken or done by such officers. In *State* v. *Carroll, supra,* it is said that a person is a *de facto* officer where the duties of the office are exercised, "first, without a known appointment or election but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; second, under color of a known and valid appointment or election but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like; third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power or defect being unknown to the public; fourth, under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such." This definition has been approved by many courts. *Erwin* v. *Jersey City*, 60 N. J. L. 141; *Wendt* v. *Berry*, 154 Ky. 586; *Walcott* v. *Wells*, 21 Nev. 47; *State* v. *Lewis*, 107 N. C. 967; *State* v. *Taylor*, 108 id. 196.

An officer *de jure* is one who is in all respects legally appointed and qualified to exercise the office. If the duties of an office or public body are performed by the officer or body *de jure*, another officer or body, though claiming under color of title, cannot become an officer or body *de facto* by undertaking to perform official acts or duties, and can

not be a *de facto* officer or body while a *de jure* officer or body is exercising the functions of the office or body. (*Howard* v. *Burke,* 248 Ill. 224; *McCahon* v. *Commissioners,* 8 Kan. 437; *In re Gunn,* 50 id. 155; *Powers* v. *Commonwealth,* 110 Ky. 386.) The grand jury, because the court had no power to continue it, was acting under color of an authority which was void, but it could not become a grand jury *de facto* because there was a grand jury *de jure* which was performing the duties of that body. The acts of the so-called grand jury of the August term, 1922, continued to May, 1923, were mere usurpations of authority and were void.

The Supreme Court of Wisconsin, in the case of *State* v. *Noyes,* 87 Wis. 340, held that indictments returned at the October term by a grand jury which had been summoned for the September term and had been continued through the October term were not void and that the grand jury was not without jurisdiction to return them at the October term. The ground of the decision was that the grand jury was a grand jury *de facto.* In that case, however, no grand jury had been summoned for the October term, there was no grand jury *de jure,* and the court held that the indictments were not void but were good and valid so far as the proceeding in question, which was a *habeas corpus* on behalf of the defendants in the indictments, was concerned, because found by a grand jury acting under color of lawful authority and a good and sufficient grand jury *de facto.* That case was cited in *People* v. *McCauley,* 256 Ill. 504, and quoted from at some length; and *People* v. *Morgan,* 133 Mich. 550, was also cited as approving its doctrine and extending it to hold that under the statutes of Michigan an indictment found by a *de facto* grand jury could not be questioned by motion to quash or challenge to the array. In neither of those cases does it appear that there was a grand jury *de jure* in existence at the time the indictments were found. In this State the rule in re-

gard to objections to the organization of the grand jury was announced in *People* v. *Gray*, 261 Ill. 140, which held that irregularities in the constitution of the grand jury are waived by pleading to the indictment, and that this doctrine applies to all informalities in the drawing or summoning of the jury and questions regarding its qualifications, but does not extend to cases where because of a fundamental defect the grand jury was without jurisdiction to act. Consent could not give the court jurisdiction to sentence the plaintiff in error in that case on a charge made otherwise than by the indictment of a grand jury. He could waive objections to the qualifications of individual jurors, but he could not waive the charge by an actual grand jury. So here, the plaintiff in error could not waive the existence of an actual grand jury with authority to examine him and to charge him with contempt. He was not indicted. He was merely a witness before the so-called grand jury. If this body was not a grand jury but was a mere body of men without authority, it had no jurisdiction to examine him as a witness or to bring him before the court for contempt in refusing to answer questions, and the court got no jurisdiction of him by the action of the supposed grand jury.

It is contended that the plaintiff in error not having raised the jurisdictional question in the criminal court has waived it and cannot raise it now. This question goes to the jurisdiction of the grand jury and of the court and can not be waived. Consent cannot give jurisdiction, and every act done by a body or a court without jurisdiction is void and may be called in question or disregarded in any proceeding and by any person at any time.

In *People* v. *Cochrane*, 307 Ill. 126, the plaintiff in error was adjudged guilty of contempt of court for refusing to answer questions before this same so-called grand jury at the September term, 1922, and was committed to the county jail for a term of ten days. Upon a writ of error the judg-

ment was affirmed, and it was said that if the order of the court to the grand jury to continue its investigation to the September term had been erroneous it would not have been without jurisdiction, and the grand jury was a grand jury in fact, performing the functions of a grand jury as a part of the court. The abstract of the record presented to the court in that case did not show that a grand jury was empaneled at the September term, 1922, the case was presented as if the grand jury had been continued from the August term and no grand jury had been summoned for the September term, and there was no intimation that a grand jury *de jure* was in existence at the time the grand jury before which Cochrane appeared was conducting its investigations. The case as it was presented was in all respects similar in its facts to *State* v. *Noyes, supra,* and *People* v. *Morgan, supra.* The last sentence of the opinion concludes with these words: "A witness called to testify before a court would not on a writ of error be permitted to try the title of the judge to his office, the organization of the court, or any question concerning the legality of the grand jury." This statement is correct as applied to the judge, the court or a grand jury *de jure* or *de facto*. It has no application to the acts of mere usurpers undertaking to perform the duties of an office while the actual *de jure* officers are in the performance of those duties.

Various irregularities of procedure are alleged for error, but since the objection to the organization of the grand jury is fatal to the proceedings they need not be considered.

The judgment of the criminal court was unauthorized by law and it will be reversed.        *Judgment reversed.*