WALTER F. MALEY, Petitioner, T. L. TAGGERT et al., Interveners, v. DISTRICT COURT OF WOODBURY COUNTY and EARL PETERS, Judge, Respondents.

No. 43411.

MAY 5, 1936.

L. H. Salinger, and William P. Welch, for petitioner.

George Gorder, Forsling & Cover, Hays, Baron & Baron, R. C. Prichard, and William B. Egan, for interveners.

H. M. Havner, and M. E. Rawlings, for respondents.

PER CURIAM.—In July, 1935, the grand jury of Woodbury county returned into the district court an alleged indictment against the petitioner herein, and some twenty other named defendants. The petitioner Maley, before entering any plea to the indictment and under the provisions of Code section 13781,

moved to set the indictment aside on numerous grounds. The court overruled this motion, and it is to review this ruling of the court that the writ herein was granted.

We are not passing on all the grounds included in this motion, but devote our attention to two grounds which we think are sufficiently controlling to warrant the sustaining of this writ. These two grounds will be referred to in detail hereafter.

It appears that in the early part of the year 1935 an investigation by the Woodbury county grand jury was precipitated by reason of an article appearing in the Cedar Rapids Gazette. This investigation involved a charge of certain racketeering within the state of Iowa. As a part of the history of this investigation, one Duckworth (who was then county attorney of Woodbury county) was charged with malfeasance in office, which resulted in his resigning his office on the 20th day of May, 1935; and one M. E. Rawlings was appointed county attorney in his place and stead on the 21st of May, 1935. A few days following his appointment Rawlings appeared before the district court of Woodbury county and satisfied the court that he was disqualified to act as county attorney in this investigation, whereupon the court, on May 27th, appointed H. M. Havner as special prosecutor and assistant county attorney, and authorized the said Havner "to appear before the grand jury for the May, 1935, term of Woodbury County, Iowa, the same as could the county attorney himself, and to examine witnesses before said grand jury the same as could the county attorney himself * * * with reference to conspiracy, fraud, graft and corruption in public office."

In pursuance of said appointment and order of the court, Havner proceeded with this investigation before the grand jury. The result of the work of the grand jury was the return of the indictment above referred to, and several other indictments of similar character.

The grand jury system is of ancient origin and dates back to the early history of England. It originally was not only an inquisitory and accusatory body, but also a trial body in all criminal matters. Later these rights were divided and the rights of the grand jury were limited to those of an accusatory body, and the trial of the criminal was transferred to what is known as the petit jury. The grand jury served in England as a barrier between the King and the rights of the subject, and

also assured the subject security against oppression or unfounded prosecution. It came to us as a part of the common law, and is designed as a means not only of bringing to trial those accused of offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusations, whether they come from the government or are prompted by partisan passion or private enmity. 12 R. C. L. p. 1014; 28 C. J. p. 763. It is an adjunct of the court, yet within its field it operates wholly independently of the court. To carry out its proper function numerous statutory regulations have been made. It not only has the duty to inquire into charges and make return of indictments where it is satisfied that a crime has been committed, but it has an equal duty to protect the citizen against an unfounded accusation and to prevent anyone from satisfying his malice, ill will, or vindictiveness against the alleged accused. Its work is to be carried on secretly to accomplish its ends. Originally the prosecuting attorney was not permitted to appear before the grand jury. Later, as under our statute (Code 1935, section 13706), the prosecuting attorney was permitted to appear before the grand jury, to aid it in its work, by examining witnesses and advising as to the law governing the questions involved. To the end that this body may properly function, numerous statutes have been passed in this and other states, among others a statute of this state which will be hereinafter referred to. It is as much the duty of the grand jury to return indictments, when they should properly be found, as to refuse indictment where the charges are unfounded and grow out of spite, malice, or ill will. Another idea, that is prevalent through all the cases involving the questions herein involved, is that the grand jury, in its investigation and conclusion, is to act alone on the evidence it has before it, and is not to be subject to outside influences.

In reaching the conclusion we have reached in this case, we have taken the above matters into consideration.

■■■ The first point to which we give our attention is the claim that during this investigation Havner, by his conduct, disqualified himself to act as assistant county attorney, and that from that time on he had no right to appear before the grand jury, under section 13781 of the Code, which provides for a motion to set aside an indictment.

" * * * and must be sustained: * * *

"6. When any person other than the grand jurors was present before the grand jury during the investigation of the charge, except as required or permitted by law."

The basis of this charge lies in the following facts shown by the record:

After Havner had spent some ten days or two weeks in this investigation before the grand jury (he having agreed with the board of supervisors that he would not charge for his services), he determined that he could not afford to spend the time and money necessary to complete this investigation (which, by the way, lasted more than three months). He thereupon called on the editor of the Cedar Rapids Gazette and advised him what the situation was, and, as a result of that conversation, this editor agreed with him that, if no one else would pay Havner for his services, he (the editor) would see that he was fairly treated. He then sent Havner some $300, and at a later date he gave him $400. Respondents conceded on submission of the cause in this court that Havner received the above amounts.

Petitioner, so far as this phase of the question is concerned, does not question the proper appointment of Havner as assistant county attorney, nor does he complain of his conduct until the time of the agreement above referred to; but he claims that by entering into this agreement Havner disqualified himself to take any further part in the investigation, and, having so disqualified himself, he fell under the ban of subdivision 6, section 13781, Code, as above set out.

Section 5180-a1 of the Code is the section which authorizes the appointment of "an attorney to act as county attorney." This section also provides that "he shall have all the authority and be subject to all the responsibilities herein conferred upon county attorneys."

Section 5180-a3 provides:

"No county attorney shall accept any fee or reward from or on behalf of anyone for services rendered in any prosecution or the conduct of any official business."

It will be noted, under these sections, that the assistant county attorney is subject to all the responsibilities of the county attorney, and that the county attorney is prohibited from accepting "any fee or reward," etc.

The question of the wisdom of these sections of the statute, and the other sections governing grand juries, their procedure, etc., is not a justiciable issue. Whether they are wise or unwise is wholly a question for the legislature. It is our opinion that, under these provisions of the statute, when the point was reached that Havner accepted this money, from thence forward he was disqualified to act in this investigation. We reach this conclusion from the following line of authorities: Hartgraves v. State, 5 Okl. Cr. 266, 114 P. 343, 33 L. R. A. (N. S.) 568, Ann. Cas. 1912D, 180; Latham v. United States (C. C. A.) 226 F. 420, 424, L. R. A. 1916D, 1118; Wilson v. State, 70 Miss. 595, 13 So. 225, 35 Am. St. Rep. 664; State v. Kent, 4 N. D. 577, 62 N. W. 631, 27 L. R. A. 686.

In the Latham case, it is said:

"The right of the citizen to an investigation by a grand jury pursuant to the law of the land is invaded by the participation of an unauthorized person in such proceedings, be that participation great or small. It is not necessary that participation should be corrupt, or that unfair means were used. If the person participating was unauthorized, it was unlawful. And this would be an unlawful invasion of the right of the citizen, and unless this unlawful invasion is rectified by a proper tribunal at the instance of the citizen, it becomes a justified illegality; and in the words of Judge Hough [United States v. Heinze (C. C.) 177 F. 770]:

" 'A justified illegality, however trivial of itself, is of the highest importance.'

"We cannot, therefore, assent to the doctrine that the presence in the grand jury room of the stenographer, and his participation in such proceedings to the extent of taking testimony of witnesses before the grand jury, is an informality, and, unless prejudice is alleged and shown, the motion should be denied. It is in my judgment a matter of substance."

Also, as throwing light on this proposition, see Commonwealth v. Berry (Ky.) 92 S. W. 936; State v. Bowman, 90 Me. 363, 38 A. 331, 60 Am. St. Rep. 266.

While we have recognized the doctrine in this state that, on the trial of one charge under an indictment, the county attorney may be assisted by a paid assistant (Shreves case, 81 Iowa 615, at page 623, 47 N. W. 899; Montgomery case, 65 Iowa

483, 22 N. W. 639; Helm case, 92 Iowa 540, 61 N. W. 246), this is as far as we have gone along this line, and of course, this has no application to the case before us.

This being true, it follows that Havner did not come within the exception under the aforesaid subdivision 6, section 13781, Code, but did fall under the prior part of the same section, and was a person other than the grand jurors present before the grand jury during the investigation of the charges. We think this disposes of this phase of the case and results in the conclusion that, from the time Havner received this money as compensation (which was long prior to the finding of the indictments), he was a stranger, so far as the grand jury was concerned, and he had no right to be present, to examine witnesses, or to express an opinion to the grand jury that there was evidence enough before it to warrant the finding of the indictments.

The thought underlying this ruling arises from the old maxim that, "A man cannot serve two masters." In other words, after receiving this compensation from the editor, Havner was then in a position where he had two masters,—one the editor, the other the state of Iowa,—and the question of whether or not their interests are adverse is not controlling in the matter.

In the case of State v. Rocker, 130 Iowa 239, 241, 106 N. W. 645, 646, we had this situation, and we said of the prosecuting attorney:

"Being disqualified he should have moved the appointment of a substitute, as provided for in Code, section 304." Section 5180-a2, Code 1935.

In the case of State v. Bower, 191 Iowa 713, 715, 183 N. W. 322, 323, we find the last expression of this court along these lines. We there said:

"Not only the ethics of the case, but the mandate of the statute, required the exclusion of all persons during the investigation of the charge against the defendant, except such as were required or permitted by law; and it may not be said that these persons who were present during the investigation and after the testimony had been given were either required or permitted to be in attendance. It is the duty of the county attorney to attend upon the sessions of the grand jury when required by that body (Code section 307), but there is no warrant for his appear-

ance when disqualified by reason of his having been attorney for the person under investigation in respect to the matter being investigated. * * * The grand jury is a secret inquisitorial body. The oath administered to every witness called before it imposes an obligation never to reveal and always to conceal all matters to which the attention of said witness may be called during his examination. It is quite apparent that to permit three witnesses or any number of witnesses to remain in the grand jury room during the investigation of a cause would eliminate all secrecy, would convert a strictly private hearing into a public investigation, and, in the instant case, would permit the prosecuting witness to dominate the hearing and make all the testimony conform to his version of the affair. This would be very prejudicial to the rights of the defendant, in the event an indictment was returned. Through such means, the grand jury system would lose its historical significance as an inquisitorial body, and the ancient landmarks which give to that body its present constitution and functions would be destroyed.''

In the Bower case, the witnesses, after giving their testimony, were permitted to remain in the grand jury room while other witnesses were testifying. In that case the lower court overruled the motion, and this court reversed.

■■■ As a second ground for said motion, it is claimed that Rawlings (the county attorney) had no right to appear before the grand jury while witnesses were being examined or the matters involved were being investigated. The attack under this division of the motion arises from the following record taken from the testimony of Rawlings himself:

''I attended on the sessions of the grand jury following the 27th of May, 1935, several times. I cannot say how frequently. I was not present during the examination of any of the witnesses whose minutes are attached to indictment 19772. As to certain other indictments against Maley and Harrison, I never took any part in the examination of any witnesses. After they were examined we got into general discussions. * * * I was in the room and indulged somewhat in the discussion that followed the testimony (of Harrison). I was present at the examination of Clyde Mayer, John Mayer, and Mrs. Mayer, at the request of Goltz. General Havner conducted the examina-

tion. This had to do with the McNaughton indictment, and I was there during a part of the investigation. Following the 27th of May there may have been some time when there would be a break in the questioning and I would ask somebody something, what they knew about the general situation, or something of that kind. I did not direct questions to the witnesses except on some few occasions. My appearances were merely occasional, when I would have nothing in the office particularly requiring my attention and I would step in and see who was testifying and what was going on, and step out again. Sometimes I was in there for part of the questioning; not more than once or twice maybe in two or three days.''

Rawlings, having in the first instance disqualified himself to participate in this investigation, had no right in the grand jury room while it was being carried on, and he equally fell within the ban of the aforesaid subdivision 6 of section 13781. We are satisfied, therefore, that both of these grounds of the motion to set aside the indictment were good and should have been sustained by the court. Having reached this conclusion, it must follow that the motion to quash the indictment should have been sustained.

As stated, certain other indictments were returned at the same session of the grand jury as the one we have heretofore disposed of.

By stipulation of the parties, the following numbered indictments of the Woodbury county grand jury are to be disposed of under the ruling made in the instant case, they having all been found under the same conditions and circumstances as was indictment No. 19772 (the one we have just been considering), and all being before this court on four different writs of certiorari: Nos. 19773, 19766, 19778, 19781, 19783, 19788, 19790, 19791, 19825, and 19826. This includes also the writs of Ray Harrison and C. W. McNaughton.

It follows, therefore, that the motion to quash each and all of these indictments, including the one under consideration, should have been sustained, and the court erred in not so ruling. The writ of certiorari herein issued is therefore sustained.—Writ sustained.

All Justices concur, except ANDERSON, J., who takes no part.