James D. STEINBECK et al., Plaintiffs,

v.

IOWA DISTRICT COURT IN AND FOR LINN COUNTY and William R. Eads, Judge, Respondents.

No. 2–57587.

Supreme Court of Iowa.

Dec. 18, 1974.

William O. Gray and Keith Stapleton, Cedar Rapids, for plaintiffs James D. Steinbeck and Wallace F. Johnson.

R. M. Fassler, Cedar Rapids, for plaintiff Donald T. Rosdail.

William H. Carmichael, Cedar Rapids, for plaintiff Darwin A. Ammeter, Sr.

Robert C. Nelson, Cedar Rapids, for plaintiff Kenneth Millsap.

James P. Hayes, Iowa City, for plaintiff Robert B. Manchester.

Richard C. Turner, Atty. Gen., Garry D. Woodward, Asst. Atty. Gen., and John M. Heckel, Sp. Asst. County Atty., for respondents.

REYNOLDSON, Justice.

These six plaintiffs were indicted by a Linn County grand jury which in the first half of 1974 conducted an intensive investigation of the Cedar Rapids police department and its personnel. Plaintiffs' motions to set aside indictments were overruled by respondent district court judge on August 20, 1974. On September 6, 1974, we granted plaintiffs' petition for writ of certiorari, accelerated filing dates, and ordered the case advanced for prompt disposition. Following en banc submission we now sustain the writ and remand this proceeding to district court with directions to set aside the indictments.

The return to the writ comprises 1243 pages. It discloses the first quarter grand jury of Linn County on July 9, 1974, issued a separate indictment against each of the six plaintiffs alleging certain crimes of conspiracy, perjury and obstruction of justice. A chronology of the manner in which the 1974 Linn County grand juries were impaneled is essential to an understanding of the issues before us.

December 31, 1973, respondent judge entered an order directing the 1974 grand jury, at its first session, to inquire into matters contained in a county attorney's report relating to the Cedar Rapids police department.

January 7, 1974, the seven persons whose names were drawn from the 1974 grand jury panel were sworn and impaneled as the Linn County grand jury for the first calendar quarter. On January 10, 1974, this grand jury returned indictments in non-related cases and indicated to respondent the police department investigation would be continued on February 4, 1974.

February 14, 1974, the first quarter grand jury was reconvened and commenced its police department investigation.

March 22, 1974, Judge August F. Honsell, Jr. entered an order extending the session of the "Special Grand Jury" into the second quarter upon an application of an assistant attorney general, filed the same date, entitled "Application to Extend Session of Special Grand Jury."

March 29, 1974, Judge James H. Carter entered an order directing the 1974 grand jury panel of twelve not to appear on April 1, 1974, that being the first secular Monday of the first month of the second calendar quarter, but instead to appear on April 8, 1974.

April 3, 1974, Judge Honsell, upon the application of the assistant attorney general, entered a clarifying order indicating his prior order was merely continuing or extending the special session of the first quarter grand jury for 1974 and not a designation that it was to be operating in a special term of said grand jury.

April 4, 1974, the assistant attorney general filed an application for a clarifying order "extending the January term of the regular Grand Jury into the second quarter or April term of the Grand Jury acting upon the matter under consideration in this additional special or reconvened session of said Grand Jury."

April 5, 1974, Judge Carter entered an order confirming that his order of March 29, 1974 was not intended to terminate the extended session of the first quarter grand jury acting in special or extended session.

April 8, 1974, the second quarter jury was drawn and impaneled. The foreman was simultaneously serving as a member of the first quarter grand jury. This second quarter grand jury reported six times, returning various indictments and "no bills" unrelated to the case before us.

June 27, 1974, respondent judge, pursuant to an application of the assistant attorney general, entered an order extending the special session or additional session of the first quarter grand jury into the third quarter and further ordering it to continue to operate, exist and function in this extended or special session until further court order.

July 1, 1974, the third quarter grand jury was drawn and impaneled. The foreman of this grand jury was also simultaneously serving on the first quarter grand jury. On the following day, July 2, 1974, this jury returned non-related indictments, "no bills," and continued three cases until its next meeting to be held on July 31, 1974. July 9, 1974, the first quarter grand jury returned the indictments against these plaintiffs and issued a four-page report signed by all the jurors which was filed of record and released to the news media. These indictments are directed "To the District Court of said State, within and for said County, at the extended or special January term thereof, in the year of our Lord, one thousand, nine hundred and seventy-four."

Plaintiffs' contentions, summarized, are 1) the first quarter 1974 grand jury ceased to exist by operation of law on March 31, 1974, and was therefore without jurisdiction or viable life to indict them in the third quarter of 1974, 2) first quarter grand jurors simultaneously serving as second and third quarter grand jurors could not legally participate in the investigations of the first quarter jury or be present when the question was taken upon the finding of the

indictments, 3) violations of several statutes in the above proceedings deprived plaintiffs of due process and equal protection under designated provisions of the United States and Iowa Constitutions. As our holding on the first issue is dispositive, it is unnecessary to consider the other two.

■ I. Respondent does not challenge plaintiffs' right to test the ruling of August 20, 1974 by an original certiorari proceeding. This court has said, however, it will determine on final hearing whether certiorari is a proper remedy even though the question is not raised by the party litigants. Wilkinson v. County Board of Education, 251 Iowa 876, 880, 102 N.W.2d 924, 926 (1960); Kommelter v. District Court, 225 Iowa 273, 275, 280 N.W. 511, 512 (1938).

In Maley v. District Court, 221 Iowa 732, 266 N.W. 815 (1936), trial court's denial of a motion to quash indictments was successfully tested by certiorari in this court. But in Uhl v. District Court in and for Monona County, 231 Iowa 1046, 1051, 2 N.W.2d 741, 744 (1942), the procedure employed in *Maley* was disapproved. An examination of the *Uhl* opinion discloses it relied on authorities holding a writ of certiorari should not issue "where there is another plain, speedy, and adequate remedy." See 231 Iowa at 1051, 2 N.W.2d at 744. This was the import of the statute then in force. Section 12456, The Code, 1939. The "other remedy," of course, was the right to appeal after final judgment. Section 793.2, The Code.

Certiorari is now governed by rules 306 through 319, Rules of Civil Procedure. These rules abolished the former requirement that certiorari could not be maintained if there was another adequate remedy. See Comment, 4 Iowa Rules Civil Procedure Annotated, p. 421 (1970); rule 308, R.C.P. Freed from the statutory constraint, this court has consistently enlarged the scope of certiorari as a remedial procedure to avoid unnecessary and costly litigation, particularly where the lower court's jurisdiction or the legality of its acts is challenged on exclusively law or constitu-

tional issues. State v. Holliday, 169 N.W.2d 768, 770 (1969); Chicago and Northwestern Railway Co. v. Fachman, 255 Iowa 989, 994, 125 N.W.2d 210, 213 (1963); Knott v. Rawlings, 250 Iowa 892, 898, 96 N.W.2d 900, 903 (1959). In a more limited sense, we sometimes have permitted this remedy where the basic issues were factual, reasoning there is an illegality within the meaning of the rule when there is not substantial evidence to support the findings on which the lower court or tribunal based its conclusions of law. Reed v. Gaylord, 216 N.W.2d 327, 334 (Iowa 1974); see Sueppel v. Eads, 261 Iowa 923, 926, 156 N.W.2d 115, 116 (1968). In change of venue cases, we make an "independent evaluation of the circumstances" to determine whether the lower court's ruling illegally violates constitutional due process. Lloyd v. District Court of Scott County, 201 N.W.2d 720 (Iowa 1972); Pollard v. District Court of Woodbury County, 200 N.W.2d 519 (Iowa 1972).

We have permitted the State to test pretrial rulings of the lower court in criminal cases by original certiorari proceedings in this court. See State v. District Court of Iowa, in & for Linn County, 218 N.W.2d 641 (Iowa 1974); State v. Eads, 166 N.W.2d 766 (Iowa 1969). We have accorded defendants the same remedy. Pollard v. District Court of Woodbury County, supra; Harnack v. District Court of Woodbury County, 179 N.W.2d 356 (Iowa 1970); Mallory v. Paradise, 173 N.W.2d 264 (Iowa 1969).

■ There is no factual dispute in this controversy. The sole issues are of law. The legality of respondent's August 20, 1974 ruling is squarely presented. To refuse to face the question now would result in extensive criminal litigation, enormous expense to the State and plaintiffs, and an incalculable loss of time to court personnel and litigants.

We hold certiorari lies to review the legality of respondent's ruling. To the extent the decision in *Uhl,* supra, is inconsistent with this holding, it is overruled.

II. Plaintiffs' contention the first quarter 1974 grand jury ceased to exist on March 31, 1974 necessarily requires consideration of several statutes which, of course, must be construed in pari materia. One Certain Person, etc. v. 1970 Grand Jury, 207 N.W.2d 33, 35 (Iowa 1973); Mallory v. Paradise, 173 N.W.2d 264, 266 (Iowa 1969). We seek to determine legislative intent by what the legislature said, rather than what it should or might have said. Rule 344(f)(13), R.C.P.

This case is here because in 1967 the Iowa Legislature abolished terms of court and provided "The district court of each judicial district shall be in continuous session in all of the several counties comprising said district." Acts 62 G.A., ch. 400, § 261, now § 602.10, The Code, 1973. Prior to this legislation, court terms were employed as a measurement of time and a triggering device to initiate and terminate various proceedings, acts, rights and obligations in the administration of justice.

Thus the concept of a continuous court term required extensive statutory amendments to substitute other time intervals and triggering mechanisms. See, e. g. (in the above chapter of the Acts of the 62nd General Assembly entitled "An act to abolish terms for holding court in the district courts of the state") § 142 (repealing §' 607.6, The Code, 1966, requiring the clerk to certify the list of jurors who served "after the adjournment of each term" and substituting a statute requiring this to be done "[u]pon the conclusion of every calendar quarter"); and § 143 (repealing § 609.18, The Code, 1966, which provided for 24 petit jurors per term, and substituting a statute which provided for jurors in a number to be ordered by the judge to be drawn in panels six times annually for two months service in counties containing a city with more than 50,000 population "and in other counties they shall be drawn four times annually to serve for the following three months").

III. Narrowing the focus, we first examine statutes relating to grand juries as those statutes appear in the 1966 Code.

Section 609.25 provided the grand jury panel of twelve should be drawn from the grand jury box at the time the petit jury was drawn "for the January term" and should constitute the panel from which to select grand jurors for one year. Section 609.32 required this panel to appear at each succeeding term during the year without summons. Section 609.35 permitted jurors discharged for any reason to be resummoned during the term. Section 770.1 provided for drawing the names of the grand jury of seven from the names of the panel of twelve on the second day of each term of court "and the persons so drawn shall constitute the grand jury for that term."

In § 770.24, The Code, 1966, the legislature provided the "grand jury, on the completion of its business, shall be discharged by the court, but, whether its business be completed or not, it is discharged by the final adjournment thereof." "Final adjournment" meant final adjournment of the court. See State v. Heft, 148 Iowa 617, 619, 127 N.W. 830, 831 (1910); State v. Reid, 20 Iowa 413, 422–424 (1866); State v. District Court of Ward County, etc., 68 N.D. 211, 225, 277 N.W. 843, 849 (1938); 38 C.J.S. Grand Juries § 33b, c, pp. 1025–1027. Thus § 770.24, The Code, 1966, as we noted in *One Certain Person,* supra at 34, was in accord with the common law concept that a grand jury existed only during the term of court for which it was summoned and its life terminated upon the expiration of the term. People v. Brautigan, 310 Ill. 472, 475–478, 142 N.E. 208, 209–210 (1923); Ex Parte Frye, 173 Kan. 392, 396, 246 P.2d 313, 317 (1952); 38 C.J.S. Grand Juries § 32a, pp. 1022–1023. The common law rule was generally adopted in statutory enactments. 38 C.J.S. Grand Juries § 33c, p. 1026.

The 1966 Code, § 604.14, required the district judges to hold four terms of court in each county and § 604.22 permitted ordering a special term, the court or judge to also "direct whether a grand or trial jury, or both, shall be summoned."

All but one of the statutes just referred to were affected by the term-abolishing legislation, Acts 62 G.A., ch. 400. Our references in the following two paragraphs are to sections of that enactment.

Section 262 repealed § 604.22, The Code, 1966, thus removing all statutory support for a judge to order special court sessions accompanied by special grand juries. Section 609.25, The Code, 1966, was amended to require the grand jury panel of twelve to be drawn on the last secular Monday of December preceding the new calendar year. Section 146. Section 609.32 was repealed and the substitute enactment required the grand jury panel of twelve to convene regularly four times a year on the first secular Monday of the first month of each calendar quarter. Section 148. Section 609.35, relating to the time within which jurors could be resummoned, was amended by striking the word "term" and substituting the words "calendar quarter." Section 150.

Turning its attention to § 770.1, the legislature amended to provide for drawing the grand jury of seven on the first Monday of the first month of each calendar quarter rather than on the second day of each term of court, *"and the persons so drawn shall constitute the grand jury for that calendar quarter."* (Emphasis added.) Section 244.

But § 770.24, The Code, 1966, with its reference to the discharge of the grand jury on final adjournment of court, was inexplicably left intact and remains unchanged from its original enactment in 1851. This anomaly was noted in *One Certain Person,* supra at 34, 35, but we were not required to explore it fully. The sole question there, as we stated in the first paragraph of the decision, was whether the existence of a grand jury could be extended into the calendar year following its selection. In holding it could not (at least where it failed to possess even *de facto* status) we relied on code provisions which terminated eligibility of members of the panel of twelve to serve beyond the calendar year. See §§ 609.2, 609.25, 609.32, 609.26, 770.11, The Code.

IV. Plaintiffs assert even though the legislature abolished the term system of courts it substituted a quarterly system which operates to terminate the grand jury of seven at the end of each calendar quarter. They point to § 609.32 (the twelve persons from whom the grand jury is to be impaneled shall convene regularly four times a year), § 609.35 (jurors who have been discharged may, during the calendar quarter, be resummoned) and § 770.1 (grand jury drawn on the first secular Monday of the first month of each calendar quarter "and the persons so drawn shall constitute the grand jury for that calendar quarter").

■■■ Clearly these sections contemplate a new working grand jury each calendar quarter. Section 609.35, by limiting the time for resummoning to the quarter, implies a legislative intent to end the functioning of the jury of seven at the quarter's end. Finally, § 770.1 implies there shall be only one grand jury per quarter. We cannot find in the 1967 legislative amendments to these sections any intent but to continue the short-term grand juries which functioned in the pre-1967 period. The title of the legislation shows the intent was to abolish the court term system, not extend the viable life of grand juries. In construing these amended statutes for the first time we of course examine both the language used and the purpose for which the legislation was enacted. Osborne v. Edison, 211 N.W.2d 696, 697 (Iowa 1973).

Plaintiffs' position finds support in Coca Cola Bottling Co. of Flagstaff v. Jones, 74 Ariz. 393, 250 P.2d 586 (1952). Arizona abolished court terms. Its constitution then provided "a trial jury shall be drawn and summoned from the body of the county at least three times a year." The Arizona Supreme Court held this constitutional provision impliedly limited a juror's service to a four month period and appellant's challenge to a hold-over petit jury panel, as not lawfully constituted, should have been sus-

tained. Cf. State v. Superior Court in and for County of Pima, 4 Ariz.App. 373, 420 P.2d 945 (1966) (holding this rule inapplicable to a grand jury where there was no comparable constitutional or statutory provision).

■ When in 1971 the legislature again directed its attention to this area it provided additional jury power not by granting a grand jury the right to carry over into succeeding quarters, but by amending § 609.25, permitting a majority of the district court judges to order a second panel from which to draw a second grand jury. But this second grand jury is restricted to matters assigned to it by the foreman of the first grand jury and "shall be governed by the same law as in the case of the original grand jury panel ánd grand jury." Acts 64 G.A., ch. 265, § 1.

■ V. Although the grand jury system is of ancient origin and dates back to the early history of England, Maley v. District Court, supra, 221 Iowa at 733, 266 N.W. at 816, present day grand juries are of statutory origin and their jurisdiction depends largely upon the applicable statutes and circumstances present. United States v. Fein, 504 F.2d 1170 (2 Cir. 1974); Annot., 75 A.L.R.2d 544, 545 (1961); 38 Am.Jur.2d, Grand Juries § 10, pp. 953–55.
pp. 953–55.

The concept of limited grand jury existence was based on considerations of infusing new blood into the grand jury at frequent intervals, avoiding the extreme personal sacrifices to jurors extended service would entail, and eliminating the possibility of semi-professional jurors. See State v. Wilson, 166 Iowa 309, 316, 144 N.W. 47, 50 (1913), supplemental opinion 166 Iowa 326, 147 N.W. 739 (1914); State v. Lewis and Clark County, 124 Mont. 282, 292–293, 220 P.2d 1052, 1057–1058 (1950). Had the legislature determined the above considerations should give way to the concept of long term investigative grand juries, examples of implementing enactments were readily available from other jurisdictions. 18 U.S.C.A.,

Federal Rules of Criminal Procedure, Rule 6(g), p. 233 ("A grand jury shall serve until discharged by the court but no grand jury may serve more than 18 months. * *"); Commonwealth v. England, 350 Mass. 83, 84–85, 213 N.E.2d 222, 223 (1966) (Upon written notice by the attorney general to a justice of the Superior Court that "public necessity requires further time by a grand jury to complete an investigation then in progress, the court may order such grand jury to continue to serve until said investigation has been completed and shall take up no new matter," quoting General Laws c. 277 § 1A); McClure v. County Court of Cty. of Dutchess, 41 A.D.2d 148, 150, 341 N.Y. S.2d 855, 857 (1973) (quoting CPL 190.15(1) which permits a court to continue a grand jury's existence upon a joint declaration of district attorney and the jury that it "has not yet completed or will be unable to complete certain business before it").

Similar plain legislative authority for hold-over grand juries cannot be found in the Iowa Code.

VI. Respondent relies on the legislative failure to amend § 770.24 which is the only statute dealing directly with the discharge of a grand jury. It is alternatively argued, without supporting authority, the words "final adjournment" refer to the jury's final adjournment, not that of the court, and in any event this statute, absent terms of court, imposes no deadline on the existence of a grand jury, which could continue without court order so long as it had unfinished business. We do not interpret, nor do we believe the legislature intended, § 770.24 to provide statutory authority for unlimited grand jury existence.

Respondent's analysis of these statutes, if accepted, might produce bizarre results. Assuming an additional second grand jury impaneled in each quarter as authorized by the 1971 amendment to § 609.25, The Code, there could be eight grand juries functioning simultaneously in the fourth quarter. From another perspective, a first quarter investigative grand jury might hold over

and function into the fourth quarter, yet the fourth quarter grand jury, confronting a similar investigative need, could not hold over by virtue of those statutes construed in *One Certain Person,* supra.

Finally, respondent's interpretation could result in a number of grand juries proceeding independently, conceivably each under the aegis of a different judge, investigating the same situation, subpoenaing the same witnesses, and arriving at conflicting results. The 1971 amendment to § 609.25, The Code, disclosed a legislative intent to avoid such conflicts by requiring a second grand jury to be impaneled only by the majority of the district court judges and to take direction from the foreman of the first grand jury.

■ The rationale respondent advances thus violates our rule of statutory construction which requires us, if possible, to avoid conclusions which lead to absurd results. State v. McGuire, 200 N.W.2d 832, 833 (Iowa 1972), and citations.

■ Falling back to the second line of defense, respondent contends if two of the quarterly-impaneled grand juries could not exist at the same time, the one impaneled second in point of time should be challenged, not the first. No authority is cited for this position which stands the *de facto-de jure* rationale on its head, see *One Certain Person,* supra at 35; Buchler v. District Court, 158 Colo. 205, 210, 405 P.2d 950, 953 (1965); People v. Brautigan, supra, 310 Ill. at 478–480, 142 N.E. at 211, and we cannot adopt it.

VII. There may be sound policy reasons for extending the life of a grand jury into successive quarters, as we indicated in *One Certain Person,* supra. This need for additional time to conduct complex investigations is underlined by the diligent efforts of the grand jury in the case before us. These jurors met on 51 days and heard 169 witnesses. It is our belief, however, respondent's arguments should be directed to the legislature, not the court. See United States v. Fein, supra. The legislature is in the best position to statutorily provide prophylactic measures to avoid abuse and confusion, as it did in the 1971 amendment to § 609.25. It could also obviate the possibility of dual service (apparent in the facts before us) which is both onerous for the affected jurors and inconsistent with the speedy and efficient operation of the respective juries.

We hold the first quarter 1974 grand jury was without jurisdiction to return indictments against these plaintiffs in the third quarter of 1974. We sustain the writ and remand to the district court with directions to set aside the indictments.

Writ sustained, remanded with directions.