## LOUD & BEUGNOT *v.* PRITCHETT & COMPANY.

1. Where a regular term of the superior court is held for one week and the court then adjourns to a definite time in the future, and finally adjourns within thirty days from the date of the beginning of the regular term, a bill of exceptions complaining of rulings made during the first week of

the court's session and presented to the judge within thirty days from the final adjournment of the term is tendered in due time.

2. Where such bill of exceptions reached the home of the judge within the time prescribed by law for tendering the same, and the judge failed to receive it on account of his absence from the State, the bill will be treated as having been duly tendered.

3. A lien upon a sawmill and its products does not exist in favor of one who simply sells to the owners of such mill standing trees which are to be severed from the realty by them and then converted into timber or logs for their mill; although the contract of sale provides that the price for such trees shall be a definite amount per thousand feet, to be ascertained by a measurement of the lumber into which the trees are to be converted.

Argued April 29, —Decided May 27, 1898.

Foreclosure of lien. Before Judge Butt. Montgomery superior court. October term, 1897.

This was a suit to foreclose a lien on a sawmill and its products, for timber furnished to the amount of 861,000 feet, of the value of $861. Defendants filed a counter-affidavit upon the ground that the timber furnished was standing timber, and therefore real estate, for the furnishing of which to sawmills the statute does not afford a lien. There was evidence that the plaintiffs furnished to defendants, during the year 1886, timber to the extent of 861,000 feet which consisted of standing trees. The contract was that the defendants should take the timber standing, cut it, haul it to their mill, saw it into logs, transport it by water to Darien, sell it, and pay the plaintiffs $1 per thousand feet. The plaintiffs had nothing to do with cutting, hauling, sawing, or marketing the timber. They ascertained the number of feet, set out in their affidavit, from the bills of the defendants, received by them for the timber sold in Darien under the contract. Defendants gave plaintiffs these amounts, said they were correct, and admitted they owed plaintiffs $861. This amount was due October 1, 1886, on which date plaintiffs completed their contract to furnish the timber. This timber was necessary to run defendants' mill. Demand for payment was refused before this suit was instituted. The court directed a verdict for the plaintiffs, and defendants excepted.

The bill of exceptions states that the case came on to be tried during the regular term of the court, on October 26, 1897,

which term was adjourned on November 20, 1897. From the transcript of the record it appears that the court met pursuant to adjournment October 25, 1897, and adjourned on October 29, 1897, until the third Monday in November, 1897, upon which day it met pursuant to adjournment, and that on November 20, 1897, it adjourned until the next regular session. The certificate of the judge to the bill of exceptions contains the following: "This bill of exceptions was forwarded to me by mail, and was received at my home in Columbus on the 15th day of December, 1897, and I was absent from the State, and it did not reach me until the 28th day of December, 1897, when I returned to the State."

*J. E. Wooten,* by *Rosser & Carter,* for plaintiffs in error.
*DeLacy & Bishop* and *D. M. Roberts,* contra.

LEWIS, J.    1. A motion was made by defendants in error to dismiss the writ of error in this case, on the ground that the bill of exceptions was not tendered, signed or certified within the time required by law, as will appear from the record. Section 5539 of the Civil Code provides, that a bill of exceptions shall be tendered within thirty days from the adjournment of the court, and in the event the court shall not adjourn within thirty days from the date of the organization or opening of the court, then the bill shall be tendered within sixty days from the date of the decision, judgment, verdict or decree rendered. It is contended by counsel for defendant in error, that where a court meets pursuant to law at a regular term limited to one week, and is adjourned at the close of the week to meet again three weeks thereafter, and such adjourned term lasts six days, the statute does not mean that a bill of exceptions in a case tried at the regular term may be tendered within thirty days after the adjournment of such adjourned term. The provisions of the statute in reference to allowing sixty days within which to tender a bill of exceptions where the court continues in session longer than thirty days do not apply to this case, as the court finally adjourned in less time than thirty days from the date of the beginning of the regular session. What then does the statute mean when it states that "the bill of exceptions

shall be tendered to the judge who presided in the cause, within thirty days from the adjournment of the court"? It manifestly means from the final adjournment of the term during which the case was tried. This final adjournment did not occur at the close of the first week's session. Where a judge adjourns his court at the end of the week prescribed for the regular term, for the purpose of transacting the unfinished business of that term after the lapse of a few days or a few weeks, the term does not expire until the final session of the court has terminated. All business, such as motions for new trial in cases heard during the first session, rules nisi upon foreclosure of mortgages, and any other matter which the law requires to be transacted during the regular term of the court can be as properly and legally done during the last sitting of the court as it could have been during its first session of that same term. We think, therefore, the correctness of the ruling embodied in the first headnote necessarily follows. See *Duggar* v. *E. T., V. & G. Ry. Co.*, 85 *Ga.* 437; *King* v. *Sears*, 91 *Ga.* 578 (8).

2. It is again insisted by counsel for the defendants in error, that even if the above proposition is true, the writ of error should be dismissed because the bill of exceptions was not tendered to the judge within thirty days from the final adjournment of the court; that is, because the judge did not actually receive the bill until the 28th of December, which was more than thirty days after the court finally adjourned on November 20th. Section 5542 of the Civil Code provides, that "If the judge is absent from home, or by other casualty fails to certify the bill of exceptions within the time specified (and without fault of the party tendering), he may still sign and certify as soon as possible, which shall be held and deemed valid." This provision in the statute seems to contemplate that where a bill of exceptions reaches the judge's home within the time prescribed by law, but is not actually received by him, on account of his absence, until after the expiration of such time, the tender shall be held as if within time. Certainly this would be a proper rule in a case like the present one, where the judge was absent from the State. It would be an unauthorized and unreasonable requirement to hold that a plaintiff in error should

hunt up the judge with his bill of exceptions in a foreign State. We, therefore, overrule the motion to dismiss the writ of error.

3. In the case of *Balkcom* v. *Empire Lumber Co.*, 91 *Ga.* 651, it was held that "For the price of standing timber purchased by the proprietor of a sawmill, there is no lien upon the mill and its products under section 1985 of the Code [of 1882]. Such timber is realty." This case was reviewed and affirmed in the case of *Giles* v. *Gano*, 102 *Ga.* 593. For the purchase-price due upon a contract of sale of standing trees the vendor has no lien upon the mill; such trees not being timber within the meaning of the statute. The question then arises in this case, did the plaintiffs furnish such trees to the defendants, or did they furnish the timber into which the trees were afterwards converted? The answer to this will be determined by a solution of the question as to when the contract of sale became complete. It is insisted for defendants in error, that inasmuch as the price agreed upon was so much a thousand feet to be ascertained after the lumber was sawed and measured at the mill, the contract was not complete until such measurement was had, and that therefore this case is to be distinguished from the one above cited, in 91 *Ga.* The specific thing sold in this case, to wit standing trees, was agreed upon. They were ready for delivery, and in fact there was an actual delivery, so to speak, when the defendants entered upon the land and commenced felling them. "When there has been no manifestation of intention, the presumption of law is that the contract is an actual sale, and that the transfer of title takes place at once, if the specific thing is agreed on, and it is ready for immediate delivery. This is universally true where the price has been paid or the goods have been expressly sold on credit. But where the sale is for cash, payment, it has been said, must precede the transfer of title. The better doctrine, however, appears to be that the transfer of title takes place immediately upon the conclusion of the contract, notwithstanding the fact that the transaction is for cash," etc. 21 Am. & Eng. Enc. L. 482–4, and numerous authorities there cited. It is true much authority can be produced from the decisions of this and other courts, to the effect that a contract of sale is incomplete when-

ever there is something remaining to be done *by the vendor;* for instance, when, under the contract, the vendor is under obligation to place the property sold in a deliverable condition. But such is not the case we are now considering. The contract was complete when the standing trees were sold. There was nothing else for the vendors to do. With the felling, sawing, or cutting into logs, hauling to the mill, and measurement of the lumber, they had nothing to do, but this work devolved entirely upon the defendants. In 21 Am. & Eng. Enc. L. 635, is the following text supported by a number of authorities cited in the notes: "Where the goods are delivered with the intention of passing the title and the sale is absolute and complete, the title passes to the vendee although the weight or measure of the article sold remains yet to be ascertained." See also McClung *v.* Kelly, 21 Iowa, 508; Nash *v.* Brewster, 2 L. R. A. 409; *Dunn* v. *State,* 82 *Ga.* 27, 3 L. R. A. 199, and notes.

Applying the above principles to the facts in this case, we think the court erred in directing a verdict for the plaintiffs.

*Judgment reversed. All the Justices concurring.*