_[File No. 6523.]_

STATE OF NORTH DAKOTA EX REL. BERTEL JACOBSON, and E. A. Donnelly, Relators, v. DISTRICT COURT OF WARD COUNTY OF THE FIFTH JUDICIAL DISTRICT, and the Hon. John C. Lowe, District Judge Thereof, Respondents.

(277 N. W. 843.)

Opinion filed February 21, 1938.

*E. R. Sinkler* and *G. O. Brekke,* for relators.

214

*Alvin C. Strutz,* Attorney General, and *Milton K. Higgins,* Assistant Attorney General,·for respondents.

PER CURIAM. The relators have applied for a supervisory writ to be directed to the District Court of Ward County in the Fifth Judicial District and to the Hon. John C. Lowe, one of the judges of the Fifth Judicial District, which writ shall require that a certain grand jury heretofore called for a special term appointed to be held in October, 1937, in said District Court of Ward County, be forthwith discharged and that the said District Court and the Judge thereof be prohibited from holding said grand jury in session.

It appears from the petition of the relators that they are taxpayers and county commissioners of said Ward county, and that they have been charged in certain accusations returned by the said grand jury

with misconduct in office, and that the grand jury is conducting investigations affecting the relators, and that relators are threatened with further accusations being returned by the said grand jury.

The petition alleges in substance that on the 4th day of October, 1937, the Hon. John C. Lowe, one of the Judges of the Fifth Judicial District, called a special term of the District Court in and for said Ward county; that on the 13th day of October, 1937, he ordered the Jury Board of Ward county to call twenty-three persons to act as a grand jury at said Special Term of the District Court, and ordered the said grand jury to report for duty on October 19, 1937; that the said grand jury met at said time and continued in session until October 27, 1937, and that on said day the said Special Term of the District Court ended or was adjourned. That the said Hon. John C. Lowe, Judge of the said District Court, made and filed his order convening the said grand jury again on November 1, 1937, being the first day of the regular November term of said District Court; that the order so convening said grand jury for said November term states that "the Grand Jury, now in session for the Special October, 1937, Term of the District Court, be and the same is hereby continued for the November, 1937 term of the District Court as provided by law." That the said grand jury did convene on November 1, 1937, and remained in session until November 10, 1937; that a petit jury was in session at said November, 1937, term and that on November 10, 1937, the said petit jury was discharged from further service during said term and ordered to report for duty at the regular December term; that the said Hon. John C. Lowe, who was acting as the presiding Judge at said November term, made an order dated November 10, 1937, to the effect that the said grand jury was excused from further attendance during the November, 1937 term of said court, and "that they be and are hereby ordered to return for Grand Jury service for the December term of the District Court on December 6, 1937." That during the said grand jury session at the said regular November term of the said District Court the said grand jury returned three separate accusations of misconduct against the relators; that on December 6, 1937, the same being the day appointed by law for the commencement of the regular December term of the District Court, the said grand jury again convened and remained in session from said December 6, 1937, to the 18th day of December,

1937, both inclusive, and that during said time no order was filed by the court continuing said grand jury for a further period after the ten days had expired; that an order was filed on December 18, 1937, wherein it was ordered: "that the Grand Jury now in session at the general December, 1937, term of the District Court be and the same is hereby ordered to return and act as the Grand Jury for the Special December, 1937 Term of the District Court to convene on the 16th day of December, 1937." That accusations were returned against the relators during the December term of court charging them with misconduct in office in regard to the purchase of rubber tires for a farm tractor that had theretofore been purchased on advertised bids; that on the 18th day of December, 1937, the Hon. John C. Lowe, Judge of said District Court, made a further order wherein it was ordered: "That said. Grand Jury be excused from further attendance on this Special December, 1937 Term of the District Court, and are ordered to return to act as a Grand Jury at the general January term on January 17, 1938." That the said grand jury is threatening to file further accusations against the said relators.

A hearing was ordered upon the petition. The respondents made return from which it appears that the grand jury was called and has remained in session substantially as averred in the petition.

It is the contention of the relators that the grand jury that was called for the special term in October, 1937, became functus officio upon the expiration of the term for which it was called and that the orders of the trial judge continuing such jury in session up to and during the December term of said district court were contrary to law; and that it was beyond the power of the court to continue the grand jury in session beyond the final adjournment of the term at which it had been impanelled, and that consequently this court should issue its supervisory writ directing that the Grand Jury be discharged and prohibiting the Grand Jury from continuing in session as such.

The respondents contend, (1) that the matter is not one within the jurisdiction of the Supreme Court, but that if it is, the jurisdiction ought not to be exercised; (2) that the District Court had authority to continue the grand jury in session beyond the expiration of the term of the District Court at which it was impanelled; and that it could continue the jury in session indefinitely by the entry of an order within

each ten day period; and (3) that in any event the grand jury is a grand jury de facto and its acts not subject to collateral attack, and, hence, no writ should issue.

These propositions will be considered in the order stated.

The first contention of the respondents is based upon § 7339, Comp. Laws 1913, which reads as follows: "The Supreme Court shall have and exercise appellate jurisdiction only, except when otherwise specially provided by law or the constitution. The Supreme Court has power in the exercise of its original jurisdiction to issue writs of habeas corpus, mandamus, quo warranto, certiorari and injunction; and in the exercise of its appellate jurisdiction and in its superintending control over inferior courts it may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction; provided, that said court shall exercise the said original jurisdiction only in habeas corpus cases and in such cases of strictly public concern as involve questions affecting the sovereign rights of the state or its franchises or privilege."

It is argued that § 7339, supra, authorizes the issuance of writs by the Supreme Court in its superintending control over inferior courts only in "such cases of strictly public concern as involve questions affecting the sovereign rights of the state or its franchises or privilege." This is not a correct construction of § 7339.

Section 7339, supra, was enacted pursuant to § 86 of the Constitution which reads as follows: "The Supreme Court, except as otherwise provided in this constitution, shall have appellate jurisdiction only, which shall be co-extensive with the state and shall have a general superintending control over all inferior courts under such regulations and limitations as may be prescribed by law."

Section 87 of the Constitution confers upon the Supreme Court original jurisdiction to issue certain prerogative writs.

Section 7339, supra, recognizes that §§ 86 and 87 of the Constitution vest in the Supreme Court three separate and distinct grants of jurisdiction: (1) appellate jurisdiction; (2) supervisory or superintending jurisdiction, that is, the power of general superintending control over inferior courts; and (3) an original prerogative jurisdiction; and also (4) power to issue such original and remedial writs as may be necessary to the proper exercise of the several grants of jurisdiction.

"This last grant was unnecessary, . . . and was doubtless inserted for greater certainty. These ancillary writs are to be employed in furtherance of any jurisdiction possessed by this court, whether appellate, original, or superintending." State ex rel. Moore v. Archibald, 5 N. D. 359, 361, 66 N. W. 234.

The provision in § 7339, supra, to which respondents refer relates to the original or prerogative jurisdiction alone. It is that jurisdiction which, the statute says, is to be exercised only in "such cases of strictly public concern as involve questions affecting the sovereign rights of the state or its franchises or privilege." This provision does not apply to the writs that may be issued by the court in the exercise of the appellate jurisdiction or the power of superintending control over inferior courts. The extent, scope and purpose of the power of superintending control were considered at some length by this court in State ex rel. Lemke v. District Ct. 49 N. D. 27, 186 N. W. 381; and State ex rel. Shafer v. District Ct. 49 N. D. 1127, 194 N. W. 745.

In the decision in State ex rel. Lemke v. District Ct. supra, this court said in part:

"The Constitution of the state of Montana contains a provision identical with § 86 of the North Dakota Constitution. See Montana Constitution, § 2, art. 8. The provision of the Montana Constitution was construed in State ex rel. Whiteside v. District Ct. 24 Mont. 562, 63 P. 400. In its opinion in that case the court said:

" 'As the appellate jurisdiction was granted for the purpose of revision and correction, and the original jurisdiction under these writs was granted to enable us to render such relief as is appropriate under them, so the supervisory power was granted to meet emergencies to which those other powers and instrumentalities are not commensurate. It is independent of both, and was designed to infringe upon the functions of neither. It has its own appropriate functions, and, without undertaking to define particularly what these functions are, we think one of them is to enable this court to control the course of litigation in the inferior courts where those courts are proceeding within their jurisdiction, but by mistake of law, or wilful disregard of it, are doing a gross injustice, and there is no appeal, or the remedy by appeal is inadequate.' 24 Mont. 562. . . .

"The Constitution of our sister state, South Dakota, also contains a

provision, the language of which is identical with § 86 of the North Dakota Constitution. See S. D. Const. art. 5, § 2. The supreme court of South Dakota has held that—

" 'This provision vests the supreme court of that state with authority to be exercised within its judicial discretion, to review by means of appropriate writs the proceedings of subordinate courts in cases where the action complained of is beyond the discretionary powers of such courts, or when there is an abuse of such discretion, and the remedy by appeal is inadequate and the case is urgent, and the circumstances require prompt action on the part of this court, to prevent injustice and injury resulting. Huron v. Campbell, 3 S. D. 309–317, 53 N. W. 185; Vine v. Jones, 13 S. D. 54, 82 N. W. 82.

"The records of this court bear ample evidence that this court has not only recognized and declared the existence of the power of superintending control over inferior courts, but that it has had no hesitancy to exercise the power in proper cases. Thus the power has frequently been repeatedly exercised to review orders relating to a change of venue in criminal cases. See Murphy v. District Ct. 14 N. D. 542, 105 N. W. 728, 9 Ann. Cas. 170; Zinn v. District Ct. 17 N. D. 135, 114 N. W. 472; State v. Winchester, 18 N. D. 534, 122 N. W. 1111, 21 Ann. Cas. 1196; Lowe v. District Ct. 48 N. D. 1, 181 N. W. 92. See also State ex rel. Enderlin State Bank v. Rose, 4 N. D. 319, 26 L.R.A. 593, 58 N. W. 514; State ex rel. Dorgan v. Fisk, 15 N. D. 219, 107 N. W. 191; Selzer v. Bagley, 19 N. D. 697, 124 N. W. 426; State ex rel. Red River Brick Corp. v. District Ct. 24 N. D. 28, 138 N. W. 988."

In the decision in State ex rel. Shafer v. District Ct. 49 N. D. 1127, 194 N. W. 745, this court said:

"The power (the power of superintending control over inferior courts) expressed in the Constitution is unlimited, save as its exercise may be regulated and limited by statute. The only statute that has been passed in the whole period the Constitution has been in force, which bears directly upon the jurisdiction of superintending control (chapter 118 of the Laws of 1891; Comp. Law 1913, § 7339), in no way limits or restricts the power. On the contrary it seems to place the entire responsibility for the proper exercise of superintending jurisdiction in the court, for it says (§ 7339): 'And in its superintend-

ing control over inferior courts it may issue such original and remedial writs as are necessary to the proper exercise of such jurisdiction.'

"It is for the court, then, to determine when a proper case is presented for the exercise of its superintending control.

"Is the power of the court in any way affected by the fact that the district court was acting within its jurisdiction? We are clearly of the opinion that it is not. . . .

"And in Wisconsin, where the precedents under a Constitution like ours are more numerous than elsewhere, it is held that the power of superintending control is not restrained or suspended by the fact that the court whose actions are to be reviewed has acted within its jurisdiction and has exercised judicial power. See State ex rel. Umbreit v. Helms, 136 Wis. 432–439, 118 N. W. 158. Indeed, it is difficult to comprehend the existence of an efficient power of superintending control if the power must always stop short of an interference when it is ascertained that the inferior tribunal was acting within the scope of its jurisdiction. How would it be possible, with the powers so limited, to 'restrain excesses,' 'quicken neglects,' and 'prevent miscarriages of justice,' if all of them may be practiced with impunity within the range of the tribunal's jurisdiction?

"Closely allied to the foregoing contention is the further proposition advanced on behalf of the respondent that the power of superintending control cannot be exercised by the court, for the reason that there is nothing before the lower court which can be acted upon. The indictments have been dismissed, the defendants discharged, and their bail exonerated. It is said that by reason of this fact the criminal cases are no longer pending before the district court; that the court itself has nothing before it to which it could address judicial action; and that this court cannot require any action to be taken that is not otherwise within the scope of the powers of that court. This argument when analyzed amounts to this: That an inferior court of general jurisdiction can, by its own erroneous action, defeat the constitutional powers of this court. This is a reductio ad absurdum. It should require no argument to refute it. The truth is that the three branches of the jurisdiction of this court, namely, appellate, superintending control, and original, were each granted in the Constitution with a view to the efficient exercise thereof by the court, and there was granted along with

the powers the means and instrumentalities through which they might become effective. It may as well be argued that an inferior court acting erroneously might defeat the exercise of the appellate power of this court. The logical and complete answer to the proposition advanced is that the power of superintending control attaches where the error of the trial court begins, and when it is exercised it directs the trial court to go back to the point where the error was committed and to proceed henceforth in accordance with the law and within its jurisdiction."

The power of superintending control which the Constitution of North Dakota vests in the Supreme Court applies as well to criminal as to civil actions and proceedings. State ex rel. Umbreit v. Helms, 136 Wis. 432, 118 N. W. 158, 160; State ex rel. McGovern v. Williams, 136 Wis. 1, 116 N. W. 225, 20 L.R.A.(N.S.) 941; State ex rel. Shafer v. District Ct. 49 N. D. 1127, 194 N. W. 745.

It does not follow, however, that the power of superintending control must or will be exercised because there has been erroneous action by a lower court that might be corrected by the exercise of such power. As was said in State ex rel. Shafer v. District Ct. 49 N. D. 1127, 194 N. W. 745, supra: "It is for the court to determine when a proper case is presented for the exercise of its superintending control." The scope of the power is one thing, the condition under which it should be exercised is another. "The former is referable to the constitutional grant, the latter to the sound discretion of this court." State ex rel. Umbreit v. Helms, 136 Wis. 432, 118 N. W. 158, supra. The power of superintending control over inferior courts was not intended to be a cumulative appellate remedy. It is a power separate and distinct from the appellate jurisdiction, and cannot be employed as a substitute, where remedy by appeal, or other adequate remedy, is available. The power of superintending control will not be exercised "upon light occasions or when other and ordinary remedies are sufficient." It will not be exercised "when there is another adequate remedy by appeal or otherwise, or unless the exigency is of such an extreme nature as to obviously justify the interposition of the extraordinary superintending power of the court." State ex rel. Umbreit v. Helms, supra; State ex rel. Red River Brick Corp. v. District Ct. 24 N. D. 28, 33, 138 N. W. 988. Note: 112 A.L.R. 1373 et seq.

We are agreed that the power of superintending control is applicable to a situation such as that which the relators assert exists in this case, namely, where a grand jury is continued in session after its life has been terminated and it has been discharged by operation of law. It becomes necessary, therefore, to determine whether under the laws of the state the grand jury has been discharged or whether it is still a legal grand jury entitled to continue its labors as such under the laws of this state.

The terms of court for Ward county were fixed by this court pursuant to the mandate of § 769a2, 1925 Supplement, as amended by chap. 111, Sess. Laws 1929, as follows: In Ward county commencing on the first Monday in each month excepting the months of August, September and October; but a jury shall not be called for any term unless, in the opinion of the judge there is sufficient business to demand a jury.

The relators contend that the terms of court being thus fixed the grand jury called for the special October 1937 term of the district court for Ward county was discharged by operation of law at the end of said special term pursuant to § 10,655, Comp. Laws, 1913. On the other hand, the respondents insist that § 10,655 is no longer in effect but that § 10,635, Comp. Laws, has superseded it to the extent that there is a conflict between the two sections; that by the later statute it is provided that a session of the grand jury may be continued from term to term by written order of the judge of the court in which said grand jury is acting. An examination of the statutes relating to sessions of the grand jury discloses that they are in some respects conflicting and contradictory and that the issue thus made is a substantial one not easy to determine.

Section 10,655 provides that "On the completion of the business before them or whenever the court shall be of opinion that the public interests will not be subserved by a further continuance of the session, the grand jury must be discharged by the court; but whether the business is completed or not, they are discharged by the final adjournment of the court." Section 10,655 was inherited from the Territory of Dakota and first appears as § 183 of the Code of Criminal Procedure, Revised Codes of Dakota, 1877.

Section 8 of the Constitution provides: ". . . The legislative

assembly may change, regulate or abolish the grand jury system." Pursuant to this constitutional provision the legislature enacted chap. 71, Sess. Laws 1890, entitled: "An Act to Provide for the Prosecution and Trial of Crimes and Offenses on Information and to Dispense with the Calling of Grand Jurors Except by Order of the District Court Judges." This chapter provided that prosecutions should be upon information and prescribed the rules to be followed in that regard. Section 9 thereof, now as amended, § 10,635, Comp. Laws 1913, provides that no grand jury shall be convened at any session of the district court unless the judge thereof so directs, and requires that a grand jury be called to attend at a term of the district court whenever the judge deems the attendance of such jury necessary; or whenever the board of county commissioners of the county wherein the court is to be held, in writing, requests him to do so; or whenever a petition in writing signed by the number of electors prescribed by such section requesting the same is presented to him. This section was amended to its present form by chap. 126, Sess. Laws 1905, which added to the original statute a provision regulating the time and manner of presenting requests or petitions for calling of grand juries to the district judge and providing that the formation of grand juries called pursuant to the section shall not be invalidated on account of certain specified irregularities, and which further provided that "no grand jury shall remain in session for a longer period than ten days at any one term of the district court except as the judge of the said court may, in his discretion, by written order filed with the clerk of said court, continue the session of said grand jury to such further time and such further term as he may deem necessary; otherwise said grand jury shall be by law discharged at the close of the tenth day of their session; provided that Sundays and legal holidays shall not be included in computing the said ten days' limitation."

The relators' contention is that construing the words "to such further time and such further term" in § 10,635, in the light of the whole statute, and especially in view of the provisions of § 10,655, "such further term" means a further term of the grand jury within the term of the district court for which it is called, the initial term being the ten-day period prescribed by the statute. On the other hand, the respondents

insist that "such further term" means a different and subsequent term of the district court.

There is no repeal clause contained in chap. 126. But of course it being a later enactment than § 10,655 its provisions must prevail in case there is an irreconcilable conflict between the two statutes. On the other hand, in considering these statutes, there being no express repeal in chap. 126, it is our duty to reconcile the two in so far as that is possible, construing the words and phrases thereof according to the context and the approved usage of the language. That is, the words are to be understood in their ordinary sense except when a contrary intention plainly appears.

Section 10,655 is in fact a re-enactment of the common law rules respecting grand juries. A grand jury cannot dissolve itself. Jones v. United States (C. C. A. 9th) 162 F. 417; 2 Bishop, New Crim. Proc. § 868; 28 C. J. 796. When not otherwise disposed of it is discharged by operation of law at the conclusion of the term of court for which it is called. Nealon v. People, 39 Ill. App. 481.

Now § 10,635, after dealing with the manner of drawing and summoning grand juries and requiring that their formation shall not be invalidated on account of certain specified irregularities, provides that no grand jury shall remain in session for a longer period than ten days *at any one term of the district court except* as the judge may continue the session thereof "to such further time and such further term as he may deem necessary." That is, the statute first places a limit on the term or period during which a grand jury may remain in session at any one term of court and automatically discharges them at the expiration of that period. The exception then empowers the judge in his discretion to extend the period or term of their session during that term of the district court. Were it otherwise the words "at any one term of the district court" are wholly surplusage. If the word "time" be given a meaning beyond the term of the district court, then the purpose of the exception is defeated. Time and term are joined by the conjunctive "and" and not by the disjunctive "or," and since they are thus joined the word "time" cannot be held to apply to that particular term of the district court, and "term" to a subsequent term of the district court. Further, if the meaning for which the respondents contend be given to the word "term," then a judge may continue a ses-

sion of the grand jury, once it is called, to any future time and term that he may see fit to designate. And he may do this when and as often, as he deems proper, thus, at his discretion, making a grand jury once called a perpetual grand jury. Considering the general theory of the law that grand juries shall be dispensed with except on special occasions, the language of the statute here under consideration, and the fact that the provisions of § 10,655 were not expressly repealed, we are forced to the conclusion that the expression "to such further time and such further term" must have reference only to a time and period. within the term of the district court for which the grand jury was first, called, and that the provisions of § 10,655 remain effective.

The respondents further contend that, in any event, the grand jury was a grand jury *de facto;* that consequently its acts are not subject to collateral attack and therefore no writ should issue.

This contention, if given full effect, would preclude the exercise of the power of superintending control in all cases where injudicious, irregular and erroneous acts are performed within the jurisdiction of the court and where the party injuriously affected by such acts has no other adequate remedy of review or correction. The very fact that acts contrary to law may not be subject to collateral attack and that no other adequate remedy for correction exists is in itself a persuasive reason why the superintending control ought to be exercised rather than the contrary.

An attack upon action taken or proceedings had in the trial court by means of an application for a supervisory writ is not a collateral attack. The fact that the acts of the trial court were within its jurisdiction or that erroneous or irregular orders were made within its jurisdiction, is not a bar to relief under the supervisory jurisdiction. Such erroneous or irregular orders, though not subject to collateral attack, will, where the ends of justice so require, be set aside by supervisory writ. State ex rel. Fourth Nat. Bank v. Johnson, 103 Wis. 623, 624, 79 N. W. 1091, 51 L.R.A. 33; State ex rel. McGovern v. Williams, 136 Wis. 1, 116 N. W. 225, 228, 20 L.R.A.(N.S.) 941; State ex rel. Shafer v. District Ct. 49 N. D. 1127, 194 N. W. 745. Note: 112 A.L.R. 1359, et seq.

Needless to say, the lawmakers in providing for a grand jury, intended that a grand jury shall be organized, that it shall continue in

session, and that it shall conduct its business in the manner prescribed by our laws and not otherwise. And where those whose rights are, or are likely to be, invaded or injuriously affected by the acts of a grand jury that purports to continue in session after it has been discharged by operation of law, invoke the power of superintending control and ask that the district court be prohibited from continuing such grand jury in session and be required to discharge it, a case is presented where the power of superintending control should be exercised. Persons affected by such erroneous action have no other adequate remedy.

Accordingly, it is ordered that a supervisory writ issue directing that the several orders continuing the grand jury in session subsequent to the final adjournment of the October 1937 term be vacated, and that the grand jury be discharged.

CHRISTIANSON, Ch. J., and BURR, NUESSLE and MORRIS, JJ., concur.

SATHRE, J., did not participate.