STATE EX REL. ADAMI, RELATOR v. LEWIS AND CLARK COUNTY, DISTRICT COURT OF FIRST JUDICIAL DISTRICT ET AL., RESPONDENTS

No. 8981

Submitted June 24, 1950. Decided July 25, 1950.

220 Pac. (2d) 1052

Mr. Wellington D. Rankin, Mr. Lester H. Loble, Helena, for petitioner. Mr. Rankin and Mr. Loble argued orally.

Mr. Melvin E. Magnuson, County Attorney, Mr. John C. Harrison, Deputy County Attorney, Mr. Michael G. Chilton, Deputy County Attorney, Mr. Floyd O. Small, Sp. Prosecutor, all of Helena, for respondents. Mr. Magnuson and Mr. Small argued orally.

Mr. Edmond G. Toomey, Mr. Charles N. Wagner, Mr. Carl Rasch, Mr. Thomas P. Patterson, Mr. H. J. Luxan, Jr., Mr. Sam

D. Goza, Jr., Mr. Leo J. Kottas, Mr. T. B. Weir, Mr. Newell Gough, Jr., Mr. E. K. Matson, Mr. Sam C. Ford, Mr. Victor H. Fall, Mr. Hugh D. Galusha, Jr., Mr. Gordon R. Hickman, Mr. Lief Erickson, Mr. William A. Brown, all of Helena, amici curiae. Mr. Erickson argued orally.

MR. JUSTICE METCALF:

This is an original proceeding by a resident and taxpayer of Lewis and Clark county on behalf of himself and other tax-payers of Lewis and Clark county, praying for a writ enjoining and restraining the defendant Lewis and Clark county and its officers from further appropriating or expending any of the tax money of the county for grand jury purposes or expenses of any kind or character whatever.

Two questions are raised by the relator's petition:

1. The relator alleges that the appointment of a special prosecutor to attend and advise the Lewis and Clark county grand jury is illegal and that his presence before the grand jury has vitiated all indictments returned by the grand jury, thus causing useless expense to the taxpayers of Lewis and Clark county, and that if the special prosecutor is permitted to continue to meet with and advise the grand jury additional expenses will be incurred and more of the funds of the county wasted. This question is discussed in State ex rel. Porter v. District Court, 124 Mont. 249, 220 Pac. (2d) 1035.

2. That the grand jury, called on July 7, 1949, and impaneled on July 25, 1949, ceased to exist as a valid and legal grand jury at the expiration of the term of court in which the grand jury was called.

This court accepted jurisdiction of the action and issued an order for the defendants to show cause why the relief prayed for should not be granted.

The defendant Lewis and Clark county and its officers appeared, represented by the county attorney, his assistants and the special prosecutor. The defendants demurred to the relator's petition on the grounds that this court has no jurisdic-

tion over the persons of the defendants or the subject matter of the action and that the petition does not state facts sufficient to constitute a cause of action. A motion to quash the order to show cause and dismiss the proceedings was also filed, making the same objections made by the demurrer, and in addition contending that all the issues raised were determined adversely to the plaintiff in Porter v. Knapp et al., 123 Mont. 614, 214 Pac. (2d) 765. That case was dismissed upon plaintiff's motion without prejudice and is not decisive of any issue there raised. Other objections were made which are not necessary to discuss either because of the disposition made of this case or because they were discussed in the case of State ex rel. Porter v. District Court, No. 8987, supra.

Without prejudice to the consideration of defendant's demurrer and motion to quash the order and dismiss the proceedings, the defendants were ordered to file an answer to the petition on the merits.

The necessary facts as alleged in the petition and admitted by the answer are: The grand jury was called on July 7, 1949, by order of both judges of Lewis and Clark county. It was regularly organized and impaneled and properly instructed and began its deliberations July 25, 1949.

On December 2, 1948, the district judges of the first judicial district made and entered an order fixing the terms of court for Broadwater and Lewis and Clark counties for 1949 and on December 2, 1949, a like order was made fixing the terms of court for 1950.

The order for the 1949 terms of court is in part:

"In the Matter of Fixing Terms
of Court for the Year 1949.

### Order

"Pursuant to the provisions of Section 8826, Revised Codes of the State of Montana, 1935, terms of court for the County of Lewis and Clark, in the State of Montana, are hereby fixed for the year 1949, as follows:

| TERMS | FIRST DAY |
|-------|-----------|
| January | 10th |
| April | 11th |
| June | 13th |
| September | 12th |

"Each term shall continue until the opening of the succeeding term; it being the intention hereby that the Court in Lewis and Clark County, Montana, shall always be in session for the transaction of business, except on legal holidays and non-judicial days."

The order for the 1950 terms of court is the same except that the terms are:

| TERMS | FIRST DAY |
|-------|-----------|
| January | 16th |
| April | 17th |
| June | 19th |
| September | 18th |

The grand jury has been in continuous session from July 25, 1949, until the present time except for intermittent recesses pursuant to the vote of the members.

The defendants' answer denies that the plaintiff is the real party in interest and that there has been any financial loss to the taxpayers of Lewis and Clark county from the grand jury or that there will be if the grand jury is permitted to continue. Records of Lewis and Clark county filed with the petition show that expenses of the grand jury through May 1950 amounted to $24,652.52. A signed statement of the two judges of the district court dated December 13, 1949, declared an emergency to exist and stated that $15,000.00 would be necessary thereafter to meet the expenses of the grand jury. On December 19th, the same district judges withdrew the resolution declaring an emergency, and said, "such resolution was presented and approved by this Court solely for the purposes of facilitating the matter of keeping books and records by the county clerk and in the office of the board and not because any

emergency budget or appropriation was deemed necessary for the purpose of obtaining money for the expenses of the operation of said Court, or any agency thereof.'' The district court then ordered expenditures for the court or any agency incurred by the court to be paid without regard to any emergency appropriations.

As in State ex rel. Porter v. District Court, No. 8987, supra, 17 members of the Lewis and Clark county bar petitioned to appear as *amici curiae* and were permitted to file briefs and argue the cause.

The demurrer and the motion to dismiss the petition challenge the jurisdiction of this court to issue a writ of prohibition or any writ directed against the grand jury.

The writ of prohibition is one of the remedial writs which this court is empowered to issue under the Montana Constitution and statutes. Art. VIII, sec. 3, Constitution; R. C. M. 1947, sec. 93-214; State ex rel. Scharnikow v. Hogan, 24 Mont. 379, 62 Pac. 493, 51 L. R. A. 958. The writ of prohibition is defined by section 93-9201, R. C. M. 1947, as a writ that ''arrests the proceedings of any tribunal, corporation, board, or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person.'' The writ may be issued to end litigation and save expense. State ex rel. King v. District Court, 107 Mont. 476, 86 Pac. (2d) 755. A writ of prohibition was found to be the proper remedy where a challenge to a jury panel was interposed upon the ground that the persons composing the array were improperly and illegally attending upon the court and the court was without jurisdiction to select a jury. State ex rel. Clark v. District Court, 86 Mont. 509, 284 Pac. 266. A taxpayer has sufficient beneficial interest to bring such a suit. Milligan v. Miles City et al., 51 Mont. 374, 153 Pac. 276, L. R. A. 1916C, 395.

A grand jury is a part of the court and must conduct itself in compliance with the statutes and Constitution in the

same manner as any other part of the judicial system. 38 C.
J. S., Grand Juries, sec. 1 b, page 981; 24 Am. Jur., Grand Jury,
sec. 2, p. 832. The grand jury is subject to control by this
court's writ of prohibition when it is acting without jurisdic-
tion or in excess of jurisdiction. State ex rel. Hall v. Burney,
229 Mo. App. 759, 84 S. W. (2d) 659; Walton v. State, 147
Miss. 851, 112 So. 790.

The grand jury was called, impaneled and began its delib-
erations during the June 1949 term of the district court of the
first judicial district in and for Lewis and Clark county. That
term ended on September 11, 1949, and the September term be-
gan September 12th.

The Montana Constitution, Art. VIII, sec. 17, provides:
"* * * In each district where two or more counties are united,
until otherwise provided by law, the judges of such district
[court] shall fix the term of court, provided that there shall be
at least four terms a year held in each county."

Section 93-315, R. C. M. 1947, provides for the terms of court
as follows: "* * * In each district where two or more counties
are united the judge thereof must fix the term of court in each
county in his district, which must be held at the county seat,
and there must be at least four terms a year in each county.
The judge of such district court must, within ten days after the
first day of December of each year, make an order which must
designate the times at which the terms of court are to be held
in each county in his district during the coming year, begin-
ning with the first day of January following such order * * *."

In compliance with these constitutional and statutory pro-
visions the district judges of the first judicial district, com-
prising Lewis and Clark and Broadwater counties, fixed the
terms of court in the above orders.

It is the petitioner's contention that the grand jury called
during the June term of court was discharged by operation of
law on September 11, 1949, at the expiration of that term.

The only statutory regulation of the length of term of the

grand jury is section 94-6314, R. C. M. 1947, which directs that the grand jury "* * * On the completion of the business before them, they must be discharged by the court; but, whether the business is completed or not, they are discharged by the final adjournment of the court, or by order of the court."

The case of State ex rel. Clark v. District Court, 31 Mont. 428, 78 Pac. 769, 3 Ann. Cas. 841, was an application for a writ of prohibition involving the validity of an indictment returned by a grand jury after a new jury list was prepared by the jury commission as required by section 93-1406, R. C. M. 1947. It. was there contended that after the new jury list was returned members of a grand jury drawn from the old list could no longer serve and a new grand jury must be drawn from the current list. The holding was that so long as jurors, grand or trial, were qualified when they were drawn they could continue to serve. In so far as trial jurors were concerned this has been altered by amendment so that at the present time a trial jury may be held over but 90 days after the new jury list is returned. That statute, 93-1406 as amended by Chapter 4, Laws of 1947, says: "* * * they shall continue to serve as jurors, if the business of the court requires the attendance of a jury, for a period not exceeding *ninety (90) days;* provided further, however, notwithstanding such limitation of service, a jury composed of such jurors, duly impaneled to try any cause, shall continue to serve in such cause until discharged by the court * * *." The quoted portion pertains to trial juries who are liable for service during any term of the year and may be held over for ninety days after the return of the new jury list.

But grand jurors serve until "discharged by the court" or "whether the business is completed or not, they are discharged by the final adjournment of the court."

The grand jury has not been discharged by the court and it cannot discharge itself. We are concerned then with the meaning of "discharged by the final adjournment of the court" and whether this grand jury has been so discharged.

Our system of terms of court grew up in England where there were four terms a year. Each term began and ended on a certain date so that there were but ninety-one days in each year that courts were in session. In America the business of the courts has increased to such an extent that courts are in constant session. Many states, including Montana, still have terms of court fixed by the Constitution or by statute. California by its Constitution of 1879 abolished terms of court. But the description of how the California courts operated prior to the abolition of terms of court is revealing as to the meaning of ''final adjournment of the court'' as used in both Montana's and California's statutes.

The case of In re Gannon, 69 Cal. 541, 11 Pac. 240, 241, cited and relied upon in State ex rel. Clark v. District Court, supra, was one where the contention was that a grand jury impaneled during the July session in 1885 had not authority to examine a witness summoned before it in March 1886.

The court said: ''The basis of the contention is that the superior court in which the jury was convened works under a system of terms and final adjournments of the court, by which its jurisdiction as a court to transact business is temporarily suspended by the end of its term, or by the final adjournment of the court; and until the reconvening of the court at the commencement of a new term, its authority to hear and determine causes ceases, and the authority of a jury in attendance upon the court ends also, and the body is dissolved by law. Such a system was, undoubtedly, part of the constitution of the courts which formerly existed in the state before the adoption of the present constitution; and many of the provisions of the Codes by which the system was established are still to be found upon the statute books. But the constitution of 1879 abolished, not only the former courts, but also the system of terms and final adjournments under which the judges thereof opened courts for the transaction of judicial business, and substituted superior courts, which it ordained should be 'always open,' legal holi-

days and non-judicial days excepted, (Article 6, sec. 5, Const.) and this command of the constitution was enforced by the legislative enactments ´[of sections] 73, 74, Code Crim. Proc. * * *''

Under the common law the term of service of the grand jury ended at the expiration of the term of court in which it was called. ''In the absence of statute to the contrary, the grand jury usually serves during the entire term of court at which it has been summoned to attend, and, unless sooner discharged by the court, does not cease to be a legally constituted body until the expiration of that period. In the absence of statutory provision to the contrary, the life of the grand jury terminates on the expiration of the term for which it is summoned. * * *'' 38 C. J. S.; Grand Juries, sec. 32, page 1022.

''The right of a grand jury to remain in session does not as a general rule extend beyond the final adjournment of court for the term, and statutes sometimes expressly declare that on final adjournment of the court the grand jury is discharged. Such statutes have been held to be declaratory of the common law.'' 38 C. J. S., Grand Juries, sec. 33, page 1026.

The very language of section 94-6314 indicates that the legislature intended the grand jury to serve for a limited period. The grand jury must be discharged by the court when its business is completed. It may be discharged before its business is completed by order of the court, but whether its business is completed or not or whether it is ordered discharged by the court or not it is discharged by final adjournment. At common law that meant final adjournment for the term. That was the contemporaneous construction of the phrase when it was adopted by Montana. So that even though we no longer strictly adhere to the common-law rules for terms of court we must look to them to ascertain the meaning of the statute designating the period of service for grand juries. Where there is no express command by statute the business of the court continues from term to term. But where the term is

used as a measure for the period of service it is still recognized and applied to make effective such statutes.

There are cases that hold that a grand jury composed of qualified jurors, duly impaneled, may continue to hold over after the term as a "de facto" grand jury and the validity of such a grand jury cannot be questioned on a motion to set aside the conviction or writ of habeas corpus or other collateral proceedings. In re Gannon, supra, was such a case and the question of a de facto grand jury was there discussed. State ex rel. Clark v. District Court was a collateral attack. State ex rel. Dunn v. Noyes, 87 Wis. 340, 58 N. W. 386, 27 L. R. A. 776, 41 Am. St. Rep. 45, is another example. People v. Morgan, 133 Mich. 550, 95 N. W. 542, applied the de facto theory under a Michigan statute that is quite different from Montana's.

But in the instant case we are confronted with a direct attack on the validity of the grand jury. The petitioner does not seek to set aside any of the indictments that were found by the grand jury after he alleges it was discharged by operation of law. He is attempting to put an end to the alleged illegal continuation of the body itself. It is immaterial whether or not indictments found by a "de facto" grand jury would be held valid or convictions affirmed. On this direct attack the only question is whether the law justified the continuance of a grand jury beyond the term in which it was called.

In Shenker v. Harr, 332 Pac. 382, 2 A. (2d) 298, 299, the Pennsylvania statute permitted the court to retain the grand jury " 'for an additional week' " if the business of the court required it. 17 P. S. sec. 1351. This statute was held to be directory only and did not require the discharge of the grand jury if the investigation upon which they were launched was unfinished. In that case the court retained jurisdiction while permitting the grand jury to complete its investigation in which it was engaged when the term came to an end but not to go into any new matter. The court said: "A tendency to establish anything approaching permanency in a grand jury is repugnant to our scheme of government and subversive of individual

rights. We are of opinion that the continuance in session of the grand jury which is the subject of the present litigation has about reached its permissible limit, that the investigation which it is conducting should be promptly concluded. * * *''

A like declaration was made by the Mississippi court in Walton v. State, supra: ''* * * the Constitution intended to provide for a legal method of establishing suitable lists of jurors, and drawing from such lists * * * at *each* term of the court. These jurors were to be taken from the body of the people. This is not only necessary to secure the full right of jury trial, and to secure the right of having a grand jury to pass upon the sufficiency of the evidence, to constitute probable cause, to warrant a person being placed on trial for a felony. Perpetual terms of the court were not contemplated, neither were perpetual juries, or professional jurors.'' [147 Miss. 851, 112 So. 792.]

Jury service is one of the major responsibilities of the citizen. When summoned he must lay aside his work, often at a considerable personal sacrifice, and serve his state. Except for military service, jury duty is the most demanding of the personal services required of a citizen. Jurors are drawn from the body of the taxpaying population. All qualified citizens may be called. It was never intended that this arduous duty be performed by a small group over the entire year. To require a jury to be in attendance for such a long period is an injustice to the juror and the accused alike.

North Dakota's statute on the term of the grand jury is similar to Montana's. Section 10655, Comp. Laws 1913, N. D., provides: ''On the completion of the business before them, or whenever the court shall be of opinion that the public interests will not be subserved by a further continuance of the session, the grand jury must be discharged by the court; but whether the business is completed or not, they are discharged by the final adjournment of the court.''

The North Dakota Supreme Court said that the above section

"is in fact a re-enactment of the common-law rules respecting grand juries." Under this section the North Dakota court ordered a grand jury that continued in session beyond the end of the term discharged. State ex rel. Jacobson v. District Court, 68 N. D. 211, 277 N. W. 843, 849.

A further analysis of cases from other jurisdictions is un- ██ necessary. The uniform rule is that in the absence of statute to the contrary the grand jury is discharged by operation of law at the end of the term of court for which it was called. Montana's statute says that they are discharged by the final adjournment of the court, whether the business is completed or not. This is mandatory. Final adjournment of the court means the final adjournment for the term. In re Gannon, supra; Loud v. Pritchett, 104 Ga. 648, 30 S. E. 870.

When the September term began on September 12, 1949, the ██ June term was automatically adjourned. Walton v. State, supra.

The final adjuornment of the court was at the expiration of the June term on September 11, 1949. The grand jury was discharged by operation of law on that date.

It is ordered that a peremptory writ issue forthwith.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES FREEBOURN and BOTTOMLY concur.

MR. JUSTICE ANGSTMAN (dissenting):

I think this court should not consider the questions here presented until after they have first been presented to and considered by the trial court.

But if we are permitted to consider the questions, I think the strict common-law rule for the holding of terms of court has been abrogated in part in Montana as section 93-315, R. C. M. 1947, will disclose.

The order of the court fixing the terms was specific in stating that the court in Lewis and Clark county "shall always be in session for the transaction of business, except on legal holidays and non-judicial days." I think whether there ever was

a "final adjournment of the court" within the meaning of section 94-6314, R. C. M. 1947, depends upon the intention of the district judges and the record here discloses that they never intended any final adjournments.